CLERKS OFFICE US DISTRICT COURT
AT CHARLOTTESVILLE, VA
FILED
September 30, 2026
LAURA A. AUSTIN, CLERK
BY: /s/ Nik Sams
DEPUTY CLERK

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**Charlottesville Division**

DR. PAMELA BAKER DEGUZMAN,

Plaintiff,

v.

RECTORS & VISITORS OF THE UNIVERSITY OF VIRGINIA,

SERVE:
Susan Harris, Registered Agent
1827 University Avenue
Northwest Wing, The Rotunda
Charlottesville, Virginia 22903

Defendant.

Case No. 3:26cv102

JURY TRIAL DEMAND

## COMPLAINT

COMES NOW Plaintiff Dr. Pamela Baker DeGuzman ("Plaintiff" or "Dr. DeGuzman") by and through her attorneys, for her complaint against Defendant Rectors & Visitors of the University of Virginia ("UVA" or "Defendant") states and alleges as follows:

## NATURE OF ACTION

1. This is an action for violations of the Rehabilitation Act of 1973, including Section 504, 29 U.S.C. § 701, *et seq*. ("Rehabilitation Act").

2. Dr. DeGuzman brings claims against her former employer, the Rectors & Visitors of the University of Virginia, for discrimination against her based on her disability, failure to accommodate, and retaliation which culminated in the termination of her employment.

## PARTIES AND RELEVANT NON-PARTIES

3. Plaintiff Dr. DeGuzman is an adult resident of the Commonwealth of Virginia who resides in Charlottesville, Virginia.

4. Dr. DeGuzman has autism and is a qualified individual with a disability entitled to protection from discrimination and retaliation under the Rehabilitation Act.

5. Defendant Rectors & Visitors of the University of Virginia ("UVA") is a public corporation and agency of the Commonwealth of Virginia which controls the University of Virginia. It is established pursuant to Va. Code Ann. § 23.1-2200.

6. UVA Health System is a division of the University of Virginia.

7. UVA receives and accepts federal funding and financial assistance.

8. During all times relevant to this Complaint, Dr. DeGuzman was an employee of UVA.

## JURISDICTION AND VENUE

9. This Court has federal question jurisdiction over the subject matter of this suit pursuant to 28 U.S.C. § 1331 because this is a civil action arising under the laws of the United States, specifically the Americans with Disabilities Act, 42 U.S.C. § 12111, *et seq*.

10. UVA is subject to personal jurisdiction of the Court because it regularly conducts business within this judicial district.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the events described in this action took place within this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

12. On or about March 20, 2025, Dr. DeGuzman filed a Charge of Discrimination

against UVA Health System with the Equal Employment Opportunity Commission, alleging that she was discriminated against based on her disability, that UVA failed to accommodate her disability, and that UVA terminated her employment in retaliation for her request for accommodations.

13. Pursuant to a workshare agreement, Dr. DeGuzman's charge was dually filed with the appropriate Fair Employment Practices Agency.

14. On August 13, 2026, the United States Department of Justice Civil Rights Division issued a Notice of Right to Sue based on the charge she submitted with the EEOC and allowing Dr. DeGuzman to bring her claims to court.

## FACTS

15. Beginning in July 2022, Dr. DeGuzman worked for UVA as a Senior Director Nurse Scientist.

16. Dr. DeGuzman has a total of twenty-five (25) years of experience working for UVA.

17. Throughout her tenure as Senior Director Nurse Scientist, Dr. DeGuzman consistently received positive performance reviews. Dr. DeGuzman's supervisor, Dr. Kathy Baker ("Dr. Baker") rated her at the highest level, "consistently exceeds expectations," across the board.

18. Dr. DeGuzman also held a courtesy appointment at the University of Virginia School of Nursing where she supervised and mentored doctoral students.

19. In addition, UVA selected Dr. DeGuzman to serve as a mentor through UVA Health's nursing mentorship program, where she received praise for her role in mentoring an

emerging leader at the outpatient surgical center.

***Dr. DeGuzman's Reasonable Accommodation Request***

20. In September 2024, Dr. DeGuzman received a diagnosis of autism spectrum disorder from her psychologist.

21. In light of this diagnosis, Dr. DeGuzman consulted with both her psychologist, Dr. Jessica Williams-Chase ("Dr. Williams-Chase"), and Allison O'Grady ("O'Grady"), Faculty/Employee Assistance Program (FEAP) consultant at UVA, to develop an accommodation request that would help her to work more effectively.

22. Through these consultations, Dr. Williams-Chase and O'Grady determined that Dr. DeGuzman should request direct feedback about her work from her supervisor and written feedback when possible to accommodate her disability. Further, they determined Dr. DeGuzman should request her supervisor redirect others offering feedback to Dr. DeGuzman to approach her directly.

23. On that same date, November 25, 2024, Dr. DeGuzman emailed Human Resources representative Jill Melton ("Melton") to inquire about the process for requesting reasonable accommodation.

24. Melton responded to Dr. DeGuzman's email with the documents required to request accommodation on or about December 2, 2024.

25. On that same date, December 2, 2024, Dr. DeGuzman wrote to Dr. Williams-Chase and asked she complete a form with the information requested by UVA in support of Dr. DeGuzman's request for accommodation.

26. On December 9, 2024, Dr. DeGuzman checked in with Dr. Williams-Chase and

learned Dr. Williams-Chase had already completed the accommodation form and faxed it to Melton.

27. Melton denied receiving this form via fax.

28. Dr. DeGuzman requested Dr. Williams-Chase re-send the document to Melton via email.

29. On December 11, 2024, Dr. Williams-Chase re-sent the reasonable accommodation request paperwork which requested the above-stated accommodations on Dr. DeGuzman's behalf.

30. On or about December 16, 2024, Melton confirmed receipt of Dr. DeGuzman's accommodation paperwork via email.

31. In that same communication, Melton directed Dr. DeGuzman to reach out to her supervisor, Dr. Baker, to discuss her reasonable accommodation request in accordance with UVA policy and procedures.

32. Dr. DeGuzman already had a standing one-on-one meeting set with Dr. Baker for later that same day.

33. Shortly after receiving the email from Melton, Dr. Baker cancelled this standing meeting with Dr. DeGuzman.

34. Dr. Baker provided as a reason for the cancellation that the meeting would now require Melton to be present.

35. Although Dr. DeGuzman informed Dr. Baker of her preference to discuss her accommodation request with Dr. Baker directly and without Human Resources present, Dr. Baker ignored this request and scheduled a meeting for herself, Dr. DeGuzman, and Melton the following day.

***December 17, 2024 Meeting with Dr. Baker and Melton***

36. Dr. Baker and Melton proceeded with the meeting with Dr. DeGuzman on or about December 17, 2024, during which they began to discuss Dr. DeGuzman's requested accommodations.

37. Melton referred to the accommodations requested by Dr. DeGuzman unreasonable, providing they would be required to "globally address others' behavior."

38. Melton informed Dr. DeGuzman that Dr. DeGuzman's job required she "intuit" specific things from her colleagues.

39. After approximately fifteen (15) minutes, Dr. Baker changed the topic of conversation from Dr. DeGuzman's accommodation request to alleged negative feedback Dr. Baker had received about Dr. DeGuzman from UVA School of Nursing students.

40. Dr. Baker informed Dr. DeGuzman that students had found her critique of their research projects to be "bullying."

41. Dr. DeGuzman had not previously heard about these complaints, but explained to Dr. Baker that the feedback she had requested as an accommodation would permit her to adjust her tone and language in such instances.

42. Dr. Baker asked Dr. DeGuzman if she can read body language.

43. Dr. DeGuzman informed Dr. Baker that she cannot due to her autism.

44. Dr. DeGuzman told Dr. Baker that she instead required clear communication and the ability to ask specific questions to gather information.

45. During that same meeting, Dr. Baker told Dr. DeGuzman that UVA was placing her on administrative leave, effective immediately, pending an investigation into potential policy

violations.

46. On a phone call with Dr. Baker later that evening, Dr. Baker responded to Dr. DeGuzman's renewed request to discuss accommodation by instructing her to continue the discussion with Melton.

47. The following day, on or about December 18, 2024, Melton informed Dr. DeGuzman that UVA would "not be proceeding with the accommodations process at this time . . . other matters need to be addressed first."

48. On information and belief, UVA did not proceed to conduct an investigation into the alleged negative feedback it received from students about Dr. DeGuzman.

49. Dr. DeGuzman heard nothing from UVA about the investigation or her request for accommodation between December 18, 2024 and UVA's subsequent termination of her employment on or about January 9, 2025.

***UVA's Termination of Dr. DeGuzman's Employment***

50. On or about January 9, 2025, Dr. Baker called Dr. DeGuzman into a virtual meeting with both herself and Melton.

51. During this meeting, Dr. Baker informed Dr. DeGuzman that her employment was being terminated because she was "not a good fit any longer" for UVA.

52. Dr. Baker did not mention the previously alleged negative feedback or any investigation having played a role in the decision to terminate Dr. DeGuzman's employment.

53. On or about January 14, 2025, in a conversation between Dr. Katie Platz ("Dr. Platz") and Dr. Baker, Dr. Platz learned from Dr. Baker that Dr. DeGuzman had been terminated because Dr. Baker did not want to provide the accommodations Dr. DeGuzman had requested.

54. Dr. Platz informed a separate colleague of this conversation, who in turn informed Dr. DeGuzman on January 14, 2025.

55. Yet another colleague informed Dr. DeGuzman that Dr. Baker had described Dr. DeGuzman's termination as arising based on an "impasse" between Dr. Baker and Dr. DeGuzman.

56. On or about January 16, 2025, Dr. DeGuzman reached back out to Faculty and Employee Assistance Program employee O'Grady to inform her that she had been terminated after requesting the accommodations they had previously discussed.

57. O'Grady reassured Dr. DeGuzman that the accommodations requested were in line with what O'Grady had assisted her to develop and reconfirmed that Dr. DeGuzman's request had been reasonable.

**COUNT I**
**Discrimination in Violation of the Rehabilitation Act**
**(Disability Discrimination)**
**29 U.S.C. § 701, *et seq.***

58. The allegations in the foregoing paragraphs are incorporated as if realleged herein.

59. At all times relevant to the Complaint, Dr. DeGuzman was a qualified individual with a disability under the Rehabilitation Act.

60. Dr. DeGuzman is disabled within the meaning of the Rehabilitation Act. Dr. DeGuzman has autism spectrum disorder, which substantially limits one or more major life activities.

61. Dr. DeGuzman is a qualified individual with a disability pursuant to the Rehabilitation Act because she can perform the essential functions of her position with or

without reasonable accommodation.

62. Dr. DeGuzman had the knowledge, skills, and abilities to perform her job well, as demonstrated by her consistent positive performance reviews.

63. Dr. DeGuzman had no documented performance concerns prior to informing UVA of her disability.

64. UVA, through Dr. Baker and Melton, demonstrated discriminatory animus against Dr. DeGuzman based on her disability through statements about her need to intuit her colleague's feelings and have a better understanding of body language.

65. One day after disclosing her disability to Dr. Baker and Melton, UVA informed Dr. DeGuzman for the first time about alleged complaints about her performance and placed Dr. DeGuzman on administrative leave.

66. Less than one month after disclosing her disability to Dr. Baker and Melton, UVA terminated Dr. DeGuzman's employment.

67. UVA would not have terminated Dr. DeGuzman from employment nor taken the other discriminatory actions described against her but for Dr. DeGuzman's disability.

68. The reasons given by UVA for Dr. DeGuzman's termination were pretextual in nature.

69. UVA acted in a willful and wanton manner and in callous disregard for Dr. DeGuzman's federally protected rights when it unfairly and unduly scrutinized her work performance, placed her on administrative leave, and terminated her employment based on her disability and need for accommodation.

70. The above-described acts by UVA constitute disability discrimination in violation of the Rehabilitation Act.

71. As a direct and proximate result of UVA's actions, Dr. DeGuzman suffered mental anguish, emotional distress, past and future loss of income and benefits of employment, and other past and future pecuniary and non-pecuniary losses.

**COUNT II**
**Discrimination in Violation of the Rehabilitation Act**
**(Failure to Accommodate)**
**29 U.S.C. § 701, *et seq.***

72. The allegations in the foregoing paragraphs are incorporated as if realleged herein.

73. At all times relevant to the Complaint, Dr. DeGuzman was a qualified individual with a disability under the Rehabilitation Act.

74. Dr. DeGuzman is disabled within the meaning of the Rehabilitation Act. Dr. DeGuzman has autism spectrum disorder, which substantially limits one or more major life activities.

75. Dr. DeGuzman is a qualified individual with a disability pursuant to the Rehabilitation Act because she can perform the essential functions of her position with or without reasonable accommodation.

76. Dr. DeGuzman had the knowledge, skills, and abilities to perform her job well, as demonstrated by her consistent positive performance reviews.

77. On December 16, 2024, Dr. DeGuzman requested direct feedback from her supervisors and colleagues as an accommodation for her disability, autism.

78. At a meeting that took place on or about December 17, 2024, UVA, through Dr. Baker and Melton, immediately dismissed Dr. DeGuzman's request as "unreasonable" and refused to discuss it further with her.

79. Dr. Baker and Melton refused to meaningfully consider Dr. DeGuzman's requested accommodation, further explore her request, or propose any alternative accommodations that would allow Dr. DeGuzman to continue to perform the essential functions of her position.

80. Instead, on or about December 17, 2024, UVA placed Dr. DeGuzman on administrative leave.

81. On or about December 18, 2024, Melton informed Dr. DeGuzman that UVA would "not be proceeding with the accommodations process at this time . . . other matters need to be addressed first."

82. UVA terminated Dr. DeGuzman's employment on or about January 9, 2025, without having ever meaningfully engaged in a conversation with Dr. DeGuzman about the accommodations she had requested.

83. UVA acted in a willful and wanton manner and in callous disregard for Dr. DeGuzman's federally protected rights when it unfairly and unduly scrutinized her work performance, placed her on administrative leave, and terminated her employment based on her disability and need for accommodation.

84. The above-described acts by UVA constitute disability discrimination in the form of a failure to accommodate Dr. DeGuzman in violation of the Rehabilitation Act.

85. As a direct and proximate result of UVA's actions, Dr. DeGuzman suffered mental anguish, emotional distress, past and future loss of income and benefits of employment, and other past and future pecuniary and non-pecuniary losses.

**COUNT III**
**Retaliation in Violation of the Rehabilitation Act**
**29 U.S.C. § 701, *et seq.***

86. The allegations in the foregoing paragraphs are incorporated as if realleged herein.

87. The Rehabilitation Act prohibits retaliation against employees who engage in protected activity, such as requesting reasonable accommodation.

88. Dr. DeGuzman's engagement in protected activity began upon disclosure of her disability to UVA, and continued through her conversations with Melton and Dr. Baker about reasonable accommodation, including the conversation with Melton and Dr. Baker that occurred on December 17, 2024.

89. UVA retaliated against Dr. DeGuzman for requesting a reasonable accommodation in violation of the Rehabilitation Act when it placed Dr. DeGuzman on administrative leave the following day, December 17, 2024, and terminated her employment less than one month later, on or about January 9, 2025.

90. But for Dr. DeGuzman's engagement in activities protected by the Rehabilitation Act, UVA would not have retaliated against Dr. DeGuzman.

91. UVA acted in a willful and wanton manner and in callous disregard for Dr. DeGuzman's federally protected rights when it unfairly and unduly scrutinized her work performance, placed her on administrative leave, and terminated her employment based on her disability and need for accommodation.

92. The above-described acts by UVA constitute retaliation in violation of the Rehabilitation Act.

93. As a direct and proximate result of UVA's actions, Dr. DeGuzman suffered

mental anguish, emotional distress, past and future loss of income and benefits of employment, and other past and future pecuniary and non-pecuniary losses.

## PRAYER FOR RELIEF

WHEREFORE, Dr. DeGuzman requests this Court enter judgment in her favor against Defendant Rectors & Visitors of the University of Virginia, and further:

a. Award her economic damages in an amount that can only be determined in discovery; and in addition,

b. Award her compensatory damages in an amount that can only be determined in discovery; and in addition,

c. Award her pre- and post-judgment interest; and in addition,

d. Award her attorneys' fees, expert fees, and costs of this action as may be permitted by law; and in addition,

e. Award Dr. DeGuzman prospective injunctive relief in the form of an order of reinstatement to her position and an order proscribing the unlawful conduct described in this Complaint; and in addition,

f. Award her such other and further relief as may be appropriate.

## JURY DEMAND

Dr. DeGuzman demands trial by jury on all issues.

September 30, 2026 Respectfully Submitted,

/s/ *Katherine L. Herrmann*

Joshua Erlich, VA Bar No. 81298
Katherine L. Herrmann, VA Bar No. 83203
Heather Murray, VA Bar No. 98648
THE ERLICH LAW OFFICE, PLLC
1550 Wilson Blvd., Ste. 700
Arlington, VA 22209
Tel: (703) 791-9087
Fax: (703) 722-8114
Email: jerlich@erlichlawoffice.com
kherrmann@erlichlawoffice.com
hmurray@erlichlawoffice.com

*Counsel for Plaintiff Dr. Pamela Baker DeGuzman*